# EXHIBIT A

SEP-10-2009  11:32     Stutman Treister & Glatt              1 310 228 5788     P.03

SECOND DISTRICT COURT

2009 SEP -9  P 4: 10

Ralph R. Mabey (2036)
Stutman Treister & Glatt PC
185 South State Street #800
Salt Lake City, UT 84111
Tel. (801) 257 7976
Fax (866) 763 0412

Tony Castañares
Stephan M. Ray
Anthony Arnold
(pro hac vice applications pending)
Stutman, Treister & Glatt P.C.
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA 90067
Tel. (310) 228-5755
Fax: (310) 228-5788

Mark F. James (5295)
Gary A. Dodge (0897)
Hatch James & Dodge
10 West Broadway, Suite 400
Salt Lake City, UT 84101
Tel. (801) 363-6363
Fax. (801) 363-6666



Attorneys for Named Plaintiffs

## IN THE SECOND JUDICIAL DISTRICT COURT FOR DAVIS COUNTY
## STATE OF UTAH

EZRA K. NILSON, SCOTT NELSON,
LEONARD K. ARAVE, INDIVIDUALLY
AND, AS APPLICABLE, AS TRUSTEES
OF THE JESSICA NILSON TRUST, THE
JOY NILSON TRUST, THE BENJAMIN
EZRA NILSON TRUST, THE BRETT
NILSON TRUST, THE ABBY NILSON
TRUST, THE NELLIE JOE NILSON
TRUST, AND JOHN DOES 1-50,

    Plaintiffs.

vs.

JPMORGAN CHASE BANK, N.A.,
INDIVIDUALLY AND AS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

COMPLAINT FOR DECLARATORY
RELIEF

Civil No. 0907-00622

Judge Page

JURY DEMANDED

ADMINISTRATIVE AGENT, BANK OF    )
AMERICA, N.A., WACHOVIA BANK,    )
N.A., GUARANTY BANK,             )
WASHINGTON MUTUAL BANK, U.S.     )
BANK NATIONAL ASSOCIATION,       )
KEYBANK, N.A., REGIONS BANK,     )
BANK OF THE WEST, UNION BANK     )
OF CALIFORNIA, N.A., WELLS FARGO )
BANK NATIONAL ASSOCIATION,       )
COMERICA BANK, SUNTRUST BANK,    )
COMPASS BANK, FIRST              )
COMMERCIAL BANK, NEW YORK        )
AGENCY, AND JANE DOES 1 - 50.    )
                                 )
        Defendants.              )

Plaintiffs Ezra K. Nilson, Scott Nelson and Leonard K. Arave, individually and, as

applicable, as trustees of the Jessica Nilson Trust, the Joy Nilson Trust, the Benjamin Ezra

Nilson Trust, the Brett Nilson Trust, the Abby Nilson Trust and the Nellie Joe Nilson Trust

(collectively, "Named Plaintiffs"), aver as follows:

1.      Named Plaintiffs are individuals and, to the extent applicable, trustees of the

Trusts named herein who are parties to the Subordination Agreement, as identified below, that is

the subject of this lawsuit.  Plaintiff Ezra K. Nilson is a citizen of the State of Nevada, Plaintiffs

Scott Nelson and Leonard K. Arave are citizens of the State of Utah, and Plaintiff Leonard K.

Arave is a resident of Davis County.

2.      Plaintiffs John Does 1 - 50 are other persons or entities with interests similar to

Named Plaintiffs who have or may claim an interest which would be affected by the declaration

sought in this action.  They do not include any person or entity that is now the subject of a

2

proceeding under Title 11 of the United States Code.  John Does 1 - 50 may include certain beneficiaries of or successors in interest to certain of the Named Plaintiffs which are Trusts.

3.      Defendants JPMorgan Chase Bank, N.A., individually and as Administrative Agent, Bank of America, N.A., Wachovia Bank, N.A., Guaranty Bank, Washington Mutual Bank, U.S. Bank National Association, KeyBank, N.A., Regions Bank, Bank of the West, Union Bank of California, N.A., Wells Fargo Bank National Association, Comerica Bank, SunTrust Bank, Compass Bank, and First Commercial Bank, New York Agency (collectively, "Named Banks"), are banks who are participants through Defendant JPMorgan Chase Bank, N.A. ("Defendant JPM") to the Subordination Agreement, as identified below, that is the subject of this lawsuit.

4.      Defendants Jane Does 1 - 50 are others persons or entities with interests similar to Named Banks who have or may claim any interest which would be affected by the declaration sought in this action.  They do not include any person or entity that is now the subject of a proceeding under Title 11 of the United States Code.  John Does 1 - 50 may include successors in interest to certain of the Named Banks.

5.      This Court has jurisdiction over the parties to and the subject matter of this Complaint pursuant to *Utah Code Annotated* §§ 78A-5-102 and 78B-6-401.

6.      Venue is proper in this Court pursuant to *Utah Code Annotated* §§ 78B-3-307(1)(a) and (3).

7.      Named Plaintiffs are signatories to that certain "Continuing Subordination and Standstill Agreement" ("Subordination Agreement") dated May 5, 2006.  The Subordination

3

530802v1

Agreement is governed by Utah law, was executed by most of the parties in Utah, and was to be performed largely in Utah.  Named Plaintiffs are identified as "Subordinated Lenders" under the Subordination Agreement.  In some cases, Named Plaintiffs are signatories as trustees of certain trusts ("Trusts").  Named Plaintiffs are uncertain of the exact legal status of some of the Trusts, of the exact identity of certain beneficiaries or successors in interest to certain of the Trusts, or of the precise identity of all persons who have or may claim any interest similar to Named Plaintiffs which would be affected by the declaration sought in this action.  Such persons are named herein as "John Doe" Plaintiffs 1-50.  Named Plaintiffs will amend this Complaint to identify the John Doe Plaintiffs when the necessary information becomes known.

8.     Defendant JPM is also a signatory to the Subordination Agreement.  Defendant JPM purported to act for itself and as agent for the other Defendants with respect to the Subordination Agreement and the subjects of this litigation.  Named Plaintiffs are uncertain of other banks or persons who may have or may claim any interest similar to the Named Banks which would be affected by the declaration sought in this action, and have named such parties herein as "Jane Doe" Defendants 1 - 50.  Named Plaintiffs will amend this Complaint to identify the Jane Doe Defendants when the necessary information becomes known.

9.     Significant controversies have arisen between Plaintiffs and Defendants under the Subordination Agreement.  To the best of Named Plaintiffs' knowledge, Defendants' position with respect to Plaintiffs' obligations and liabilities under the Subordination Agreement is set out in a letter ("Demand Letter") from Richard S. Krumholz, Esq., dated September 3, 2009, a copy of which is attached as Exhibit "A."

4

530802v1

10.    Named Plaintiffs deny that they are liable to Defendants under the Subordination Agreement in any amount and for any of the reasons claimed in the Demand Letter.

11.    To the extent Named Plaintiffs can ascertain Defendants' contentions from the Demand Letter, Named Plaintiffs contend that the distributions in question were not covered by the Subordination Agreement at all.  For example, the distributions were not on "Subordinated Debt" or made by "members of the Borrowing Group to [a] Subordinated Lender" under section 1(a) of the Subordination Agreement.   Moreover, even assuming *arguendo* that such distributions were covered by the Subordination Agreement, they were "Permitted Payments" under section 2 of the Subordination Agreement, they were authorized by the Senior Lenders under section 1(a) of the Subordination Agreement, or Defendant JPM permitted the payments in question.

12.    Named Plaintiffs deny that the facts alleged in the Demand Letter constitute a default under the Subordination Agreement.  Named Plaintiffs further allege that the facts and circumstances cited in the Demand Letter were created by Defendant JPM itself, that Defendant JPM either negligently or fraudulently concealed its knowledge of these facts, and of its own creation of these facts, from Plaintiffs and other parties during their course of dealing, and that Defendant JPM's actions effectively prevented Plaintiffs from remedying any alleged default.

13.    As a result of the foregoing, Named Plaintiffs allege that (a) Defendant JPM waived the claims it now makes; (b) because of Defendant JPM's actions and concealment of material facts, and Plaintiffs' reasonable reliance on the same, Defendants are estopped from

5

asserting such claims; and (c) Defendant JPM breached the Subordination Agreement and the related covenant of good faith and fair dealing.

14.   In all of these matters, Defendant JPM acted as agent for the other Defendants, as to which all of Plaintiffs' defenses to Defendants' claims apply.

15.   The lack of further specificity as to Defendants' positions and claims in the Demand Letter prevents Named Plaintiffs from pleading with greater specificity the grounds for their denial of liability, their affirmative defenses or their related claims at this time. Named Plaintiffs will supply additional specific allegations as facts become known.

16.   Named Plaintiffs believe that Defendant JPM's negligence and fraudulent concealment of facts give rise to affirmative claims for relief by Plaintiffs against Defendant JPM and, under the doctrine of *respondeat superior*, all of the Defendants. However, Named Plaintiffs cannot adequately plead such claims at this time. Named Plaintiffs reserve their rights to assert such claims and any other claims and, after sufficient discovery, will seek leave to amend this Complaint to plead such claims with greater specificity.

17.   Plaintiffs have an interest in the Subordination Agreement, a written contract, and there is a current controversy between Plaintiffs and Defendants as to the parties' respective rights, obligations and liabilities thereunder. Pursuant to *Utah Code Ann.* §§ 78B-6-401, *et seq.*, Plaintiffs have a right to a declaration by this Court as to their legal obligations and rights under the Subordination Agreement.

6

530802v1

18.    Named Plaintiffs respectfully ask this Court to resolve the significant controversies between the parties by declaring their respective rights and obligations under the Subordination Agreement, so as to fully resolve the controversies.

### Jury Demand

Named Plaintiffs hereby demand trial by jury of all issues triable by jury.

### Prayer for Relief

WHEREFORE, Named Plaintiffs hereby pray for declaratory relief for a determination of the rights and responsibilities of the parties under the Subordination Agreement, together with such other and supplemental relief as is appropriate, and for their costs of suit, attorneys' fees, and such other and further relief as is just and reasonable under the circumstances.

DATED this ____ day of September, 2009.

Ralph R. Mabey
Tony Castañares
Stephan M. Ray
Anthony Arnold
Stutman Treister & Glatt P.C.

Mark F. James
Gary A. Dodge
Hatch, James & Dodge, PC

Attorneys for Plaintiffs

Plaintiffs' Address:
39 East Eagleridge Drive, Suite 102
North Salt Lake, Utah 84054

7

530802v1

# Exhibit A

Fulbright (DO)        8/3/2009 3:39 PM  PAGE    2/004   Fax Server

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
2200 ROSS AVENUE, SUITE 2800
DALLAS, TEXAS 75201-2784
WWW.FULBRIGHT.COM

RICHARD S. KRUMHOLZ                        DIRECT DIAL:    (214) 855-8000
PARTNER                                    TELEPHONE:      (214) 855-8000
RKRUMHOLZ@FULBRIGHT.COM                    FACSIMILE:      (214) 855-8200

September 3, 2009

**VIA FACSIMILE @ 310/228-5788**
**AND CERTIFIED MAIL/RETURN RECEIPT**

TO:   Ezra K. Nilson; Scott Nelson; Leonard K. Arave,
      Individually and as Trustee of the Jessica Nilson Trust,
      the Joy Nilson Trust, the Benjamin Ezra Nilson Trust,
      the Brett Nilson Trust, the Abby Nilson Trust and the
      Nellie Jon Nilson Trust

      c/o Tony Castañares, as counsel for the above individuals
      and Leonard K. Arave, as Trustee
      Stutman, Treister & Glatt P.C.
      1901 Avenue of the Stars, Suite 1200
      Los Angeles, CA 90067

Dear Mr. Castañares:

      We have been retained by JP Morgan Chase Bank, N.A. as Administrative Agent
("*Administrative Agent*") for the lenders ("*Senior Lenders*") under the Credit Agreement dated
May 5, 2006 (the "*Senior Credit Agreement*"), to pursue the Senior Lenders' claims in
connection with wrongful transfers and retention of funds from Pleasant Hill Investments, L.C.
("*Pleasant Hill*"), Woodside Group, Inc. ("*Woodside*") and various of their affiliated entities and
subsidiaries (collectively, the "*Borrowing Group*") to each of the above-named individuals and
trusts (collectively, the "*Subordinated Lenders*"). We are writing to you because you are counsel
to the individual who is supposed to receive notice on behalf of the Subordinated Lenders. In
this regard, we ask that you please forward this letter to all Subordinated Lenders.

      The wrongful transfers at issue include wrongful distributions made to and accepted by
the Subordinated Lenders in violation of the Continuing Subordination and Standstill Agreement
("*Subordination Agreement*"), also dated May 5, 2006. As a result of this conduct, the
Subordinated Lenders are in breach of the Subordination Agreement and are liable to the Senior
Lenders and Administrative Agent. In addition to breach of contract, the Subordinated Lenders
also appear to be guilty of, among other things, conversion, negligent misrepresentation, and
unjust enrichment, entitling Senior Lenders to actual and exemplary damages, attorneys' fees,
and various equitable remedies including the imposition of constructive trusts, specific
performance and injunctive relief.

80026582.1

AUSTIN • BEIJING • DALLAS • DENVER • DUBAI • HONG KONG • HOUSTON • LONDON • LOS ANGELES • MINNEAPOLIS
MUNICH • NEW YORK • RIYADH • SAN ANTONIO • ST. LOUIS • WASHINGTON DC

September 3, 2009
Page 2

As you should know, under the Subordination Agreement all indebtedness and other obligations of every type and nature owed by members of the Borrowing Group to the Subordinated Lenders were subordinated to the payment obligations set forth in the Senior Credit Agreement. In fact, the Subordination Agreement only permits the Borrowing Group to make distributions to the Subordinated Lender, and for the Subordinated Lenders to accept such distributions, *if* the Borrowing Group is not in default of its obligations to the Senior Lenders under the Senior Credit Agreement. Specifically, Section 2 of the Subordination Agreement provides as follows:

2.    Restriction of Payment of Subordinated Debt, Disposition of Payments Received by Subordinated Lender. The members of the Borrowing Group will not make, and Subordinated Lender will not accept or receive, any payment or benefit in cash or otherwise (or exercise any right of, or permit any set-off with respect to, the Subordinated Debt), directly or indirectly, on account of any amounts owing on the Subordinated Debt, provided, however, the members of the Borrowing Group may make, and Subordinated Lender may accept, Permitted Payments (hereinafter defined), if and only if at the time of each Permitted Payment and both before and after giving effect thereto (a) no Default or Event of Default under the Senior Credit Agreement shall have occurred and be continuing, and (b) the members of the Borrowing Group will remain in compliance with the covenants set forth in Section 5.3 of the Senior Credit Agreement.

Despite the fact that Pleasant Hill was in default under the Senior Credit Agreement in January 2007, if not earlier, the Borrowing Group paid, distributed and otherwise transferred funds to the Subordinated Lenders in violation of this provision. As a result of these wrongful payments, the Subordinated Lenders were required to immediately pay and deliver all of the monies received in violation of Section 2 of the Subordination Agreement to Administrative Agent. Specifically, Section 3 of the Subordination Agreement provides as follows:

3.    Delivery of Payments. In the event that notwithstanding this Agreement, any payment or distribution of assets of the members of the Borrowing Group or any of their Subsidiaries of any kind or character, whether in cash, property, or securities, from any source whatsoever shall be received by Subordinated Lender contrary to the provisions of this Agreement, such payment or distribution shall be held in trust for the benefit of and shall be immediately paid or delivered (with all necessary endorsements) by such holder to the Administrative Agent, for application to the payment or prepayment of all such Specified Senior Debt remaining unpaid, to the extent necessary to pay all such Specified Senior Debt in full in cash after giving effect to any other concurrent payment or distribution to the Senior Lenders.

Fulbright (DO)        9/3/2009 3:39 PM  PAGE   4/004   Fax Server

September 3, 2009
Page 3

In this regard, Administrative Agent hereby demands the Subordinated Lenders immediately deliver to Administrative Agent all monies received from the Borrowing Group in violation of the Subordination Agreement. Alternatively, Administrative Agent hereby demands that the Subordinated Lenders confirm that they are in possession of the full amount of the wrongfully transferred monies and agree to hold those monies in trust without transferring, disbursing or otherwise disposing of them pending further notice. Finally, as the result that the Subordinated Lenders cannot comply with the above, Administrative Agent hereby demands that they pay, without condition, the difference in exchange therefore, of its position, any and all tax refunds to an amount under and inclusive of all distributions made by the Borrowing Group to the Subordinated Lenders in the calendar year 2007.

Obviously, given the nature of the damage caused thus far of this matter, Administrative Agent hereby demands that the Subordinated Lenders respond to this demand letter no later than close on Thursday, September 10, 2009, with their confirmation set forth to comply with the above items, and to provide adequate assurances of such compliance. Moreover, due to the imminent and continuing risk of irreparable harm being caused, Administrative Agent and the Senior Lenders resulting from the wrongful conduct of the Subordinated Lenders, failure of the Subordinated Lenders to comply with the demands in this letter may require Administrative Agent to seek judicial remedies in order to protect their interests.

Very truly yours,

Richard S. Treister

RST/KOM
Enclosure

cc: