SHANE D. HILLMAN (8194)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
E-mail: shillman@parsonsbehle.com

RICHARD S. KRUMHOLZ
Texas Bar No. 00784425
KRISTIN R. TURNER
Texas Bar No. 24049549
REBECCA O. MILNE
Texas Bar No. 24056904
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone: (214) 855-8000
Facsimile:  (214) 855-8200
E-mail: rkrumholz@fulbright.com
E-mail: kturner@fulbright.com
E-mail: rmilne@fulbright.com
*Admitted Pro Hac Vice*

Attorneys for Defendants Bank of America, N.A.,
KeyBank, National Association., Regions Bank,
Bank of the West, Union Bank of California, N.A.,
Comerica Bank, SunTrust Bank, Compass Bank,
JPMorgan Chase Bank, N.A., and First Commercial
Bank, New York Agency

---

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| EZRA K. NILSON, SCOTT NELSON, LEONARD K. ARAVE, INDIVIDUALLY, AND AS APPLICABLE, AS TRUSTEES OF THE JESSICA NILSON TRUST, THE JOY NILSON TRUST, THE BENJAMIN EZRA NILSON TRUST, THE BRETT NILSON TRUST, THE ABBY NILSON TRUST, THE NELLIE JOE NILSON TRUST, | **DEFENDANTS BANK OF AMERICA, N.A., KEYBANK NATIONAL ASSOCIATION, REGIONS BANK, BANK OF THE WEST, UNION BANK OF CALIFORNIA, N.A., COMERICA BANK, SUNTRUST BANK,** |

1

| | |
|---|---|
| AND JOHN DOES 1-50,<br><br>     Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.<br>INDIVIDUALLY AND AS ADMINISTRATIVE<br>AGENT, BANK OF AMERICA, N.A.,<br>WACHOVIA BANK, N.A., GUARANTY BANK,<br>WASHINGTON MUTUAL BANK, U.S. BANK<br>NATIONAL ASSOCIATION, KEYBANK N.A.,<br>REGIONS BANK, BANK OF THE WEST,<br>UNION BANK OF CALIFORNIA, N.A., WELLS<br>FARGO BANK NATIONAL ASSOCIATION,<br>COMERICA BANK, SUNTRUST BANK,<br>COMPASS BANK, FIRST COMMERCIAL<br>BANK, NEW YORK AGENCY, AND JANE<br>DOES 1-50,<br><br>     Defendants. | **COMPASS BANK, JPMORGAN CHASE BANK, N.A., AND FIRST COMMERCIAL BANK, NEW YORK AGENCY'S ANSWER, COUNTERCLAIMS FOR RELIEF AND REQUEST FOR PRELIMINARY INJUNCTION**<br><br>Case No.  1:09-cv-00121<br><br>Judge:  Dale A. Kimball |

Defendants Bank of America, N.A., KeyBank National Association, Regions Bank, Bank of the West, Union Bank of California, N.A., Comerica Bank, SunTrust Bank, Compass Bank ("Compass"), Compass as the successor-in-interest i) to all of the loans at issue that were previously owned by Guaranty Bank ("Guaranty"), and ii) to all of the rights and obligations of Guaranty under the "Senior Credit Agreement" (as defined in Defendants' Sixteenth Defense below) and the "Subordination Agreement" (as defined in paragraph 1 of Defendants' Second Defense below), both of which are at issue in this case, JPMorgan Chase Bank, N.A. ("JPMorgan"), as successor-in-interest to all of i) the loans at issue that were previously owned by Washington Mutual Bank ("WMB"), and ii) the rights and obligations of WMB under the Senior Credit Agreement and Subordination Agreement at issue in this case, and First Commercial Bank, New York Agency (collectively, the

"Defendants"), hereby answer Plaintiffs' Complaint, counterclaim and move the Court for entry of a Preliminary Injunction as follows:

### FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim against Defendants upon which relief may properly be granted.

### SECOND DEFENSE

Defendants deny all allegations contained in the Complaint unless specifically admitted below.  Defendants admit, deny or otherwise answer the specific numbered allegations of the Complaint as follows:

1.      Defendants deny the first sentence of Paragraph 1 of Plaintiffs' Complaint as it misstates the parties to the Continuing Subordination and Standstill Agreement dated May 5, 2006 by and between Plaintiffs and Defendant JPMorgan, as Administrative Agent, among others (the "Subordination Agreement").  Defendants admit that Ezra K. Nilson ("Nilson"), Scott Nelson ("Nelson") and Leonard K. Arave ("Arave") are individuals and parties to the Subordination Agreement, but deny that they are all also parties to the Subordination Agreement as "trustees of the Trusts" named therein.  Arave is the only party to the Subordination Agreement, as trustee for such Trusts (as defined in Plaintiffs' Complaint).  Defendants admit that Nilson is a citizen of the State of Nevada, that Nelson and Arave are citizens of the state of Utah, and that Arave is also a resident of Davis County, Utah.

2.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 2 of Plaintiffs' Complaint as the identities of these "plaintiffs" have not been revealed.

3.      Defendants admit that JPMorgan, as Administrative Agent for Defendants, is a signatory to the Subordination Agreement as alleged in Paragraph 3 of Plaintiffs' Complaint.  Defendants also admit that JPMorgan serves as Administrative Agent for JPMorgan Chase Bank, N.A., Bank of America, N.A., Wachovia Bank, N.A., U.S. Bank National Association, KeyBank National Association, Regions Bank, Bank of the West, Union Bank of California N.A., Wells Fargo National Association, Comerica Bank, Compass Bank, SunTrust Bank, and First Commercial Bank, New York Agency. Defendants deny that JPMorgan serves as Administrative Agent for Guaranty or WMB, and aver that Guaranty and WMB are not proper parties to this lawsuit.  Except as otherwise specifically admitted or otherwise stated herein, Defendants deny any and all allegations in Paragraph 3 of Plaintiffs' Complaint.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 4 of Plaintiffs' Complaint as the identities of these "defendants" have not been revealed.

5.      The allegations in Paragraph 5 of Plaintiffs' Complaint state a conclusion of law to which no response is required.

6.      The allegations in Paragraph 6 of Plaintiffs' Complaint state a conclusion of law to which no response is required.

4851-0435-7637.1

7.    Defendants admit that the Subordination Agreement is governed by Utah law.  Defendants deny the first sentence of Paragraph 7 of the Complaint as it misstates the parties to the Subordination Agreement, and specifically deny that the Named Plaintiffs, as that term is defined in Plaintiffs' Complaint, are signatories to the Subordination Agreement, that they are identified as "Subordinated Lenders" under the Subordination Agreement, or that all of the Named Plaintiffs are signatories as trustees of certain Trusts at issue herein.  As stated in Paragraph 1 herein, only Plaintiff Arave is a signatory to the Subordination Agreement as a trustee for any Trusts.  Except as specifically admitted, denied or otherwise stated herein, Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7 of Plaintiffs' Complaint.

8.    Defendants admit that JPMorgan is a signatory to the Subordination Agreement.  Defendants admit the second sentence of Paragraph 8 of the Complaint to the extent that under the Subordination Agreement, JPMorgan serves as Administrative Agent for Defendants, but otherwise deny the allegations in that sentence.  Except as admitted, denied or otherwise stated herein, Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 of Plaintiffs' Complaint.

9.    Defendants admit that Richard S. Krumholz, Esq., sent a demand letter ("Demand Letter") on behalf of JPMorgan, as Administrative Agent for Defendants, to Plaintiffs on September 3, 2009, and that a true and correct copy of the Demand Letter is attached to the Complaint as Exhibit A.  Defendants also admit that some, but deny that all,

4851-0435-7637.1

of their contentions concerning Plaintiffs' obligations and liabilities are contained in the Demand Letter.  Except as admitted, denied or otherwise stated herein, Defendants deny any and all allegations in Paragraph 9 of Plaintiffs' Complaint.

10.    Defendants admit that Plaintiffs purport to deny liability to the Defendants under the Subordination Agreement in any amount and for any of the reasons claimed in the Demand Letter, and Defendants deny that Plaintiffs are in any way correct in that assertion. As stated below, Plaintiffs are liable to Defendants for well over $50 million in unlawfully transferred funds.  Except as admitted, denied or otherwise stated herein, Defendants deny any and all allegations in Paragraph 10 of the Complaint.

11.    Defendants deny all allegations contained in Paragraph 11 of the Complaint.

12.    Defendants admit that Plaintiffs purport to plead that they deny that the facts alleged in the Demand Letter constitute a default under the Subordination Agreement, and Defendants deny that Plaintiffs are in any way correct in that assertion.  The unlawful distributions and retention of over $50 million of Defendants' funds, constitute, among other things, a breach of the Subordination Agreement.  Except as admitted, denied or otherwise stated herein, Defendants deny any and all allegations in Paragraph 12 of the Complaint.

13.    Defendants deny all allegations in Paragraph 13 of the Complaint.

14.    Since Defendants deny all of the allegations in Paragraph 13 of the Complaint, Defendants deny Paragraph 14 of the Complaint as stated.  Defendants admit that JPMorgan served as Administrative Agent under the Subordination Agreement.  Except

as admitted, denied or otherwise stated herein, Defendants deny all allegations in Paragraph 14 of the Complaint.

15.     Defendants deny all the allegations in the first sentence of Paragraph 15 of the Complaint.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15 of the Complaint.

16.     Defendants deny all allegations in the first two sentences of Paragraph 16 of the Complaint.  Except as denied or otherwise stated herein, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the Complaint.

17.     Defendants admit that the Subordination Agreement is a written contract and that there is currently a controversy between Plaintiffs and Defendants thereunder.  As to the second sentence of Paragraph 17, the allegations state conclusions of law and no response is required.  To the extent that an answer is required, Defendants deny any and all allegations in Paragraph 17 of the Complaint.

18.     Defendants admit that Plaintiffs purport to plead for a declaration of the parties' respective rights and obligations under the Subordination Agreement, and Defendants assert that Plaintiffs are liable to Defendants for well over $50 million in unlawfully transferred funds.  Defendants further deny that Plaintiffs are entitled to any of the relief demanded in Paragraph 18 of the Complaint.

19.     Any allegation not specifically admitted herein is denied.

## THIRD DEFENSE

Plaintiffs' claims fail in whole or in part to the extent Plaintiffs failed to comply with the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

## FOURTH DEFENSE

Plaintiffs' claims fail in whole or in part as Defendants acted in good faith at all times relevant to the allegations set forth in Plaintiffs' Complaint.

## FIFTH DEFENSE

Plaintiffs' declaratory and other relief should be denied because Plaintiffs Nilson, Arave and Nelson are liable to Defendants for breach of the Subordination Agreement, are guilty of conversion, failure to disclose material facts and/or fraudulent concealment, and are liable for specific performance, constructive trust, other actual damages, punitive damages, attorneys' fees and all other costs of court (all of which are detailed below).

## SIXTH DEFENSE

Defendants are not liable and Plaintiffs are not entitled to any of the relief sought, in whole or in part, because the alleged injuries, damages and/or harm, is/are not the result of any act or omission by Defendants, and instead resulted solely from and/or were caused solely by Plaintiffs' own conduct, or alternatively, by intervening events or the acts or omissions of others.

## SEVENTH DEFENSE

Plaintiffs' claims should be reduced or barred in their entirety because of Plaintiffs' own comparative, contributory and/or proportionate responsibility.

4851-0435-7637.1

## EIGHTH DEFENSE

Plaintiffs' claims against Defendants are barred because Defendants' actions or inactions were not the proximate, legal or substantive cause of any damages, injury, loss or harm complained about or allegedly suffered by Plaintiffs, the existence of which is denied.

## NINTH DEFENSE

Plaintiffs are not entitled to, and Defendants are not liable for, in whole or in part, any damages, injuries, losses or harm they allegedly have suffered, which Defendants deny, because Defendants' actions or inactions were not a producing cause of such alleged damages, injury, loss or harm allegedly suffered by Plaintiffs, the existence of which is denied.

## TENTH DEFENSE

Plaintiffs' claims against Defendants are barred in whole or in part because Plaintiffs failed to mitigate any of their claimed damages, injuries, losses or harm, the existence of which are denied.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by waiver.

## TWELFTH DEFENSE

Plaintiffs' claims are barred in whole or in part by estoppel.

## THIRTEENTH DEFENSE

Plaintiffs' clams are barred by their ratification of the transaction(s) at issue.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

4851-0435-7637.1

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

## SIXTEENTH DEFENSE

Guaranty has been closed by the Office of Thrift Supervision and put into FDIC receivership. The FDIC receiver has sold Guaranty's right, title and interest in and to (i) the loan in question and all related interests in the Senior Credit Agreement dated May 5, 2006 by and among JPMorgan Chase Bank, N.A., for itself and Administrative Agent for the other lenders party thereto, and Pleasant Hill Investments, Inc. (the "Senior Credit Agreement") and (ii) the Subordination Agreement to Compass. Compass, therefore, is the successor-in-interest i) to all of the loans at issue that were previously owned by Guaranty, and ii) to all of the rights and obligations of Guaranty under the Senior Credit Agreement and the Subordination Agreement. As such, Guaranty is not a real party in interest for jurisdictional purposes.

## SEVENTEENTH DEFENSE

WMB has been closed by the Office of Thrift Supervision and put into FDIC receivership. The FDIC receiver has sold WMB's right, title and interest in and to (i) the loan in question and all related interests in the Senior Credit Agreement and (ii) Subordination Agreement to JPMorgan. JPMorgan, therefore, is the successor-in-interest i) to all of the loans at issue that were previously owned by WMB, and ii) to all of the rights and obligations of WMB under the Senior Credit Agreement and the Subordination Agreement. As such, WMB is not a real party in interest for jurisdictional purposes.

4851-0435-7637.1

## EIGHTEENTH DEFENSE

Defendants assert that Plaintiffs' claims against them individually are barred because the individual Defendants are not liable to Plaintiffs under the Subordination Agreement.  To the extent that this Paragraph implies that JPMorgan is liable to Plaintiffs as Administrative Agent under the Subordination Agreement, such liability is specifically denied.

## NINETEENTH DEFENSE

Defendants assert that Plaintiffs' claims are barred, in whole or in part, based on Plaintiffs' bad faith, including statutory bad faith, and/or pursuant to the doctrine of unclean hands.

## TWENTIETH DEFENSE

Defendants assert that Plaintiffs are not entitled to relief due to their own inequitable conduct.

## TWENTY FIRST DEFENSE

Defendants have insufficient knowledge or information upon which to form a belief whether there may be additional, as yet unstated, defenses and reserve the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

WHEREFORE, Defendants pray that Plaintiffs' Complaint be dismissed with prejudice, that Plaintiffs take nothing thereby and that Defendants be awarded their reasonable attorneys' fees and costs, as well as such other and further relief as the Court deems just and proper under the circumstances.

4851-0435-7637.1

## COUNTERCLAIMS

Defendants hereby counterclaim, for causes of action as described more fully below, against plaintiffs Ezra K. Nilson, Scott Nelson and Leonard K. Arave, individually and, as applicable, as Trustee of the Jessica Nilson Trust, the Joy Nilson Trust, the Benjamin Ezra Nilson Trust, the Brett Nilson Trust, the Abby Nilson Trust, and the Nellie Joe Nilson Trust (collectively, "Plaintiffs" or "Counter-Defendants") and allege as follows:

## PARTIES

1.      Defendant and counterclaimant Bank of America, N.A. is a national banking association with its "main office" in North Carolina and, as such, is a citizen of the State of North Carolina.

2.      Defendant and counterclaimant KeyBank National Association is a national banking association with its "main office" in Cleveland, Ohio, and, as such, is a citizen of the State of Ohio.

3.      Defendant and counterclaimant Regions Bank is an Alabama corporation with its principal place of business in Birmingham, Alabama.  As such, Regions Bank is a citizen of the State of Alabama.

4.      Defendant and counterclaimant Union Bank of California, N.A. is a national banking association with its "main office" in San Francisco, California, and as such, is a citizen of the State of California.

5.      Defendant and counterclaimant Comerica Bank is a Texas corporation with its principal place of business in Dallas, Texas.  As such, Comerica Bank is a citizen of the State of Texas.

4851-0435-7637.1

6.     Defendant and counterclaimant SunTrust Bank is a Georgia corporation with its principal place of business in Georgia.  As such, SunTrust Bank is a citizen of the State of Georgia.

7.     Defendant and counterclaimant Compass Bank is an Alabama corporation with its principal place of business in Birmingham, Alabama.  As such, Compass Bank is a citizen of the State of Alabama.

8.     Defendant and counterclaimant JPMorgan Chase Bank, N.A. is a national banking association with its "main office" in Cleveland, Ohio, and as such, is a citizen of the State of Ohio.

9.     Defendant and counterclaimant First Commercial Bank, New York Agency is a corporation formed in Taiwan, registered in New York, and with its principal place of business in New York, New York.  As such, First Commercial Bank, New York Agency is a citizen of the State of New York.

10.    On information and belief, Plaintiff and Counter-Defendant Ezra K. Nilson ("Nilson") is a citizen of the State of Nevada.

11.    On information and belief, Plaintiff and Counter-Defendant Scott Nelson ("Nelson") is a resident of Weber County, Utah and citizen of the State of Utah.

12.    On information and belief, Plaintiff and Counter-Defendant Leonard K. Arave ("Arave") is a resident of Davis County, Utah, and a citizen of the State of Utah.

## JURISDICTION AND VENUE

13.    This court has jurisdiction over this action pursuant to 18 U.S.C. § 1332. This Court has personal jurisdiction over Plaintiffs.  The amount in controversy exceeds

the sum of $75,000, exclusive of interests and costs, and the controversy is between citizens of different states.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391; 1441.

## SUMMARY OF ALLEGATIONS

15.     The individual Plaintiffs herein are all executives of Woodside Group, LLC ("Woodside"), Pleasant Hill Investments, LC ("Pleasant Hill") and various of their affiliates (collectively, "Woodside Group").   On May 5, 2006, in order to obtain hundreds of millions of dollars in loans from Defendants, the individual Plaintiffs signed a Subordination Agreement (described more fully below) in which they agreed, among other things, not to accept distributions from Woodside Group if these entities were in default under a Credit Agreement also dated May 5, 2006 by and among JPMorgan Chase Bank, N.A. for itself and as Administrative Agent for certain other lenders party thereto, and Pleasant Hill Investments, LC (the "Senior Credit Agreement").  Despite this express agreement, the individual Plaintiffs (as officers of Woodside) directed Woodside to make distributions, which Woodside then made, to or for the benefit of all Plaintiffs, including the individual Plaintiffs, as well as their related family trusts and family members, in amounts exceeding $50 million (the "Distributions").

16.     Through these Counterclaims, and through the Demand Letter (as defined in paragraph 29 below) sent by JPMorgan as Administrative Agent for many of the Defendants and counterclaimants as lenders ("Senior Lenders") under the Senior Credit Agreement, Defendants now seek recovery of these funds that rightfully belong to them and that were wrongfully transferred to and/or for the benefit of the Plaintiffs in breach of

14

the Subordination Agreement, and for injunctive relief relating thereto.  Defendants also seek actual and punitive damages, as well as their attorneys' fees and costs in connection with these Counterclaims.

## FACTS

17.     Woodside Group collectively has operated as one of the largest privately held homebuilding companies in the United States, with the vast majority of its home developments existing in Texas, Arizona, California, Florida, Minnesota, Nevada and Utah.   Individual Plaintiffs Nilson, Arave and Nelson (collectively, the "Insider Plaintiffs") have served as the executive officers and/or management team for the Woodside Group at all relevant times.  These Insider Plaintiffs, together with their family trusts, control over 90% of the ownership interests of the Woodside Group.

### THE SENIOR CREDIT AGREEMENT

18.     On or about May 5, 2006, Pleasant Hill, one of Woodside's home-building affiliates, entered into the Senior Credit Agreement with various Senior Lenders (many of which are Defendants herein) in the original principal amount of $620 million, which served as a revolving line of credit for Pleasant Hill's use.[1]

19.     Under the Senior Credit Agreement, all Subordinated Debt (as defined in the Senior Credit Agreement) was guaranteed by Woodside, among others, including all obligations of every type and character, owed by the Woodside Group to Plaintiffs.

---

[1]   On September 16, 2008, Pleasant Hill, along with substantially all of the Woodside Group affiliates, consented to the entry of orders for relief in involuntary bankruptcy cases filed in the United States Bankruptcy Court for the Central District of California.   The Woodside Group's and Pleasant Hill's bankruptcy cases are being jointly administered in that court under Case No. 08-20682.

4851-0435-7637.1

### THE SUBORDINATION OF ALL PAYMENT OBLIGATIONS

20.    When they executed the Senior Credit Agreement, the parties anticipated that the Insider Plaintiffs may attempt to make distributions to themselves and their family trusts.  In contemplation of these potential distributions, Pleasant Hill, Woodside, certain other entities, JPMorgan (as the Administrative Agent for Defendants) and the Plaintiffs (as the Subordinated Lenders) entered into, and Plaintiffs became personally liable under, a Continuing Subordination and Standstill Agreement dated May 5, 2006 (the "Subordination Agreement", a true and correct copy of which is attached hereto as Exhibit "A"),[2] under which the Woodside Group was permitted to make distributions to Plaintiffs, ***but only if*** certain terms and conditions were met.

21.    Specifically, under the Subordination Agreement all indebtedness and other obligations of every type and nature owed by members of the Woodside Group to the Subordinated Lenders were subordinated to the Woodside Group's payment obligations to the Defendants set forth in the Senior Credit Agreement.  In fact, the Subordination Agreement *only* permits the Woodside Group to make distributions to the Subordinated Lenders (*i.e.* the Plaintiffs), and for the Subordinated Lenders to accept such distributions, *if* the Woodside Group is not in default of its obligations to the Senior Lenders (*i.e.* the Defendants) under the Senior Credit Agreement.  In particular, section 2 of the Subordination Agreement provides as follows:

> **2. Restriction of Payment of Subordinated Debt, Disposition of Payments Received by Subordinated Lender**. The members of the [Woodside] Group will not make, and Subordinated Lender[s]

---

[2]    Unless otherwise defined herein, capitalized terms shall have the meaning set forth in the Subordination Agreement.

will not accept or receive, any payment or benefit in cash or otherwise (or exercise any right of, or permit any set-off with respect to, the Subordinated Debt), directly or indirectly, on account of any amounts owing on the Subordinated Debt, provided, however, the members of the [Woodside] Group may make, and Subordinated Lender[s] may accept, Permitted Payments (hereinafter defined), if and only if at the time of each Permitted Payment and both before and after giving effect thereto (a) no Default or Event of Default under the Senior Credit Agreement shall have occurred and be continuing, and (b) the members of the [Woodside] Group will remain in compliance with the covenants set forth in Section 5.3 of the Senior Credit Agreement.

22.     Per the terms of the Senior Credit Agreement, Pleasant Hill's authority to obtain credit by submitting draw requests was contingent upon its compliance with certain covenants relating to financial leverage ratios and limited by certain "Woodside base" formulas.  It was an automatic default under the Senior Credit Agreement for Pleasant Hill to exceed the Woodside base ratios, and no notice or declaration of default was required.

### THE UNLAWFUL DISTRIBUTIONS

23.     After execution of the Senior Credit Agreement and the Subordination Agreement, the Senior Lenders extended credit under the revolving credit line to Pleasant Hill, and continued to do so through 2007.

24.     By January 2007, if not earlier, Pleasant Hill was in default under the Woodside base formulas of the Senior Credit Agreement, and, on or before the summer of 2007, the Insider Plaintiffs (i.e. the management of the Woodside Group) knew or should have known of this default.

25.     Despite these defaults, and while these defaults were ongoing, the Insider Plaintiffs caused the Woodside Group to distribute over $50 million to or for the benefit of themselves, their family trusts, and other wholly controlled entities – all in direct violation of section 2 of the Subordination Agreement.

## NEED FOR AN INJUNCTION

26.     As a result of these wrongful and unlawful payments, under the terms of the Subordination Agreement, Plaintiffs were required to hold all monies received in violation of section 2 of the Subordination Agreement in trust for the benefit of JPMorgan, as Administrative Agent for the Senior Lenders, and to immediately pay and deliver all of the monies received in violation of section 2 of the Subordination Agreement to JPMorgan, as Administrative Agent for the Senior Lenders:

> **3. Delivery of Payments**.  In the event that notwithstanding this Agreement, any payment or distribution of assets of the members of the [Woodside] Group or any of their Subsidiaries of any kind or character, whether in cash, property, or securities, from any source whatsoever shall be received by Subordinated Lender[s] contrary to the provisions of this Agreement, ***such payment or distribution shall be held in trust for the benefit of and shall be immediately paid or delivered (with all necessary endorsements) by such holder to the Administrative Agent***, for application to the payment or prepayment of all such Specified Senior Debt remaining unpaid, to the extent necessary to pay all such Specified Senior Debt in full in cash after giving effect to any other concurrent payment or distribution to the Senior Lenders. (emphasis added).

27.     Despite the sizable Distributions Plaintiffs extracted from the Woodside Group, Insider Plaintiff Nilson (Pleasant Hill's and Woodside's CEO) has testified in a related proceeding that Plaintiffs will be unable to pay the monetary damages that their wrongful conduct has caused.  Obviously, this result would lead JPMorgan and the Senior Lenders to be irreparably harmed and without any adequate remedy at law.

18

28.     On information and belief, Plaintiffs are expecting to receive in the coming weeks, and/or are recently in receipt of, large tax refunds that Defendants have an equitable interest in and that will likely serve as the only funds that will enable Plaintiffs to satisfy any judgment on these Counterclaims.  Upon information and belief, the tax refunds were originally paid from monies distributed to Plaintiffs in violation of section 2 of the Subordination Agreement and which were required to be held in trust and paid over to JPMorgan, as Administrative Agent for the Senior Lenders.  Specifically, Plaintiffs will be receiving (or have already received) tax refunds that include sums resulting from the 2008 conversion of Woodside and numerous operational subsidiaries from subchapter S corporations and qualified subchapter S subsidiaries to limited liability companies (the "Tax Refunds").  The Tax Refunds are inextricably linked to the wrongful Distributions at issue in this lawsuit and the Defendants have strong interests in these funds.  Indeed, ***Plaintiffs are receiving these Tax Refunds largely as repayment of funds that were improperly distributed to the federal and state governments on behalf of the Plaintiffs and in breach of the Subordination Agreement, when those funds were required to be held in constructive trust and delivered to JPMorgan***.  According to an independent examiner appointed by the court in the Woodside Group's bankruptcy cases, these Tax Refunds will likely result in over $100 million in refunds to be paid to Plaintiffs.  *See* Statement of Investigation Conducted by Examiner Paul S. Aronzon, a true and correct copy of which is attached hereto as Exhibit "B," at 4:2 – 4:3.

29.     As a result of the above wrongful conduct, JPMorgan, acting as Administrative Agent for Defendants, sent the Plaintiffs a demand letter dated September

3, 2009, a true and correct copy of which is attached to Plaintiffs' Complaint and attached hereto as Exhibit "C" (the "Demand Letter") wherein JPMorgan expressly advised the Plaintiffs of the Subordination Agreement's terms, obligations and stipulated remedies, and demanded that the Plaintiffs comply with the Subordination Agreement by delivering the wrongfully obtained funds to JPMorgan and/or holding such funds in constructive trust.   JPMorgan also requested that Plaintiffs not transfer or otherwise disseminate the amount of Tax Refunds they receive, up to the amount of Distributions made to Plaintiffs from January 1, 2007, to the present.   Plaintiffs have, to date, failed and refused to deliver the wrongfully obtained funds to JPMorgan.   Instead, on September 9, 2009, in an apparent attempt to win some sort of "race to the courthouse" to secure a judicial forum which they believed to be most favorable to their interests, Plaintiffs filed the instant action for declaratory relief in the Second Judicial District Court for Davis County, Utah, Civil Action Number 090700622, which JPMorgan subsequently removed to this Court on September 18, 2009.[3]   Given the lack of an adequate remedy at law, and the irreparable harm that would necessarily result if a judgment against the Plaintiffs on these Counterclaims cannot be satisfied, Defendants request that the Court issue an injunction, as more fully described below.

## FIRST COUNTERCLAIM FOR RELIEF
(Breach of Subordination Agreement)

30.    Defendants repeat and re-allege paragraphs 1 - 29 and incorporate them by reference as though fully set forth herein.

---

[3] Defendants consented to JPMorgan's removal, and pursuant to the Federal Rules of Civil Procedure, filed their written consent with the Court on October 12, 2009.

31.     JPMorgan and the Senior Lenders (which include Defendants) have at all times fully performed their obligations under the Subordination Agreement.

32.     In accepting and retaining the Distributions made to or for the benefit of Plaintiffs by the Woodside Group while the Woodside Group was in default under the Senior Credit Agreement, the Plaintiffs (as the Subordinated Lenders) have breached the Subordination Agreement.

33.     Because there were defaults under the Senior Credit Agreement when the Woodside Group made the Distributions, the Distributions were not "Permitted Payments" under the Subordination Agreement and were thus accepted and received in breach of the Subordination Agreement.

34.     Critically, after the Plaintiffs wrongfully accepted the above-described Distributions, they failed to either hold such payments in trust or immediately pay or deliver such payments to the Administrative Agent (JPMorgan) as required by the Subordination Agreement.

35.     As a result of Plaintiffs' continuing breaches of the Subordination Agreement, Defendants have sustained actual damages in an amount to be determined at trial, but in any event, in excess of the minimum jurisdictional limits of this Court.

36.     Defendants are entitled to an award of its attorneys' fees and costs pursuant to section 17 of the Subordination Agreement.

<u>SECOND COUNTERCLAIM FOR RELIEF</u>
(Specific Performance)

37.     Defendants repeat and re-allege paragraphs 1 - 36 and incorporate them by reference as though fully set forth herein.

4851-0435-7637.1

38.     In addition and in the alternative, section 14 of the Subordination Agreement provides for certain remedies available in the event of a breach:

> 14.   **Breach of Agreement by [Woodside] Group or Subordinated Lender[s].** In the event of any breach of this Agreement by the members of the [Woodside] Group or Subordinated Lender[s], then and at any time thereafter and in addition to all other rights and remedies of the Administrative Agent and Senior Lenders, the Administrative Agent shall have the right to declare immediately due and payable all or any portion of the Specified Senior Debt without presentment, demand, protest or notice of dishonor, all of which are hereby expressly waived by the members of the [Woodside] Group and Subordinated Lender[s]. *In addition, Administrative Agent and Senior Lenders shall be entitled to equitable relief, including without limitation specific performance, in order to enforce this Agreement and Subordinated Lender[s] waive[s] any claims that Administrative Agent and Senior Lenders are not entitled to such relief, including, without limitation, that there is an adequate legal remedy.* No delay, failure or discontinuance of the Administrative Agent or any Senior Lender in exercising any right, privilege, power or remedy hereunder shall be deemed a waiver of such right, privilege, power or remedy; nor shall any single or partial exercise of any such right, privilege, power or remedy preclude, waive or otherwise affect the further exercise thereof or the exercise of any other right, privilege, power or remedy. (emphasis added)

39.     As indicated above, when the Plaintiffs wrongfully accepted the Distributions at issue, they breached the Subordination Agreement and their express trust obligation to the Administrative Agent.

40.     Pursuant to the terms of the Subordination Agreement, the Defendants are entitled to a judgment requiring the Plaintiffs to specifically perform their obligation to turn over to the Defendants all funds they received in breach of the Subordination Agreement.

4851-0435-7637.1

41.      As stated above, Defendants have no adequate remedy at law.   Only through the exercise of the Court's equitable powers to enforce specific performance can the Defendants be fully protected from the immediate and irreparable injury which Plaintiffs' ongoing actions have inflicted.

42.      In addition to an order of specific performance, Defendants are entitled to an award of their attorneys' fees and costs pursuant to section 17 of the Subordination Agreement.

### THIRD COUNTERCLAIM FOR RELIEF
(Unjust Enrichment)

43.      Defendants repeat and re-allege paragraphs 1 - 42 and incorporate them by reference as though fully set forth herein.

44.      In violation of the express terms of the Subordination Agreement, the Plaintiffs received and/or accepted the wrongful Distributions from the Woodside Group. These Distributions and the acceptance thereof conferred improper benefits on the Plaintiffs.

45.      Plaintiffs knew, or should have known, that their receipt of these benefits was contrary to the fundamental principles of equity and good conscience.

46.      Permitting Plaintiffs to retain the benefits conferred upon them would be inequitable.

47.      Defendants have been damaged by the Plaintiffs' actions and have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Defendants be fully protected from further imminent and irreparable harm which Plaintiffs' actions threaten to inflict.

48.     Defendants are entitled to recover the value of the benefits wrongfully conferred upon, and/or retained by, Plaintiffs in an amount to be determined at trial.

## FOURTH COUNTERCLAIM FOR RELIEF
(Constructive Trust)

49.     Defendants repeat and re-allege paragraphs 1 - 48 and incorporate them by reference as though fully set forth herein.

50.     The actions of Plaintiffs entitle Defendants to a judgment imposing a constructive trust under Utah law, by which the Subordination Agreement is governed and under which it must be construed.   Specifically, Defendants request that a constructive trust be imposed over the monies that were wrongfully received and accepted by Plaintiffs from the Woodside Group in violation of section 2 of the Subordination Agreement, as detailed above.

51.     Plaintiffs have been and continue to be unjustly enriched as a result of their wrongful conduct, including their acceptance of and failure and refusal to return the funds that rightfully belong to Defendants.

52.     The specific funds received by the Plaintiffs can be directly traced to the wrongful behavior of the Plaintiffs, as more specifically described above.

53.     Defendants have no adequate remedy at law to protect them from Plaintiffs' wrongful conduct and, as such, the Court should exercise its equitable powers and impose a constructive trust on the funds in which Defendants have an equitable interest that are currently retained by the Plaintiffs in breach of their express trust obligation.

## FIFTH COUNTERCLAIM FOR RELIEF
(Conversion)

54.     Defendants repeat and re-allege paragraphs 1 - 53 and incorporate them by reference as though fully set forth herein.

55.     The Plaintiffs directed the payment of the Distributions—personal property rightfully belonging to Defendants—from the Woodside Group to, or for the benefit of, themselves at a time when they knew or should have known that some or all of the payments were made in violation of the Subordination Agreement and their express trust obligation to the Administrative Agent and Defendants.

56.     The knowing and wrongful transfer, retention and possession of the Distributions, and the knowing exercise of dominion and control over such funds in denial of and in derogation of Defendants' title to or rights therein, constitutes a conversion of property rightly belonging to Defendants.

57.     As a result of the Plaintiffs' conversion of funds, Defendants have sustained actual damages in amount to be proven at trial, but in any event, in excess of the minimum jurisdictional limits of this Court.

58.     Defendants have been damaged as a result of Plaintiffs' conversion and are entitled to an award of punitive damages in an amount to be determined at trial.

## SIXTH COUNTERCLAIM FOR RELIEF
(Preliminary Injunction)

59.     Defendants repeat and re-allege paragraphs 1 - 58 and incorporate them by reference as though fully set forth herein.

4851-0435-7637.1

60.     Defendants will suffer imminent, immediate and irreparable injury if Plaintiffs, and all acting in concert with them, including all heirs, legal representatives, successors and assigns, are not immediately restrained from disseminating, transferring or otherwise disposing of or spending: (i) any funds they have received from or on behalf of the Woodside Group since January 1, 2007, including, without limitation, the Distributions; (ii) any funds they receive in the future from or on behalf of the Woodside Group; and/or (iii) Tax Refunds already received or received in the future, in an amount equal to all Distributions made by the Woodside Group to the Plaintiffs, as Subordinated Lenders in the calendar year 2007.

61.     The irreparable harm described herein is equitable in nature and demonstrated by, among other things:  (i) Plaintiffs' failure to deliver the wrongfully transferred funds to JPMorgan, as Administrative Agent for Defendants, per the Subordination Agreement; (ii) Plaintiffs' failure to hold such funds in trust for Defendants; (iii) Plaintiffs' failure to confirm to JPMorgan, as Administrative Agent for Defendants, that they will not disseminate or otherwise transfer the Tax Refunds pending resolution of this case; and (iv) the instant Action for Declaratory Relief, filed by Plaintiffs in response to JPMorgan's September 3, 2009 Demand Letter.  The risk of imminent, immediate and irreparable injury is heightened considering the fact that the Plaintiffs are individuals or trustees for trusts not normally in possession of surplus cash in an amount that would adequately compensate Defendants for their damages.  In fact, Insider Plaintiff Ezra Nilson (current Woodside officer and manager, who formerly served as Chairman of the Board and Chief Executive Officer of Woodside Group, Inc.,

26

and who is also Woodside's and Pleasant Hill's majority shareholder and a Plaintiff in this action) has testified that he and the other shareholders are without sufficient capital to pay Defendants the amount wrongfully transferred to the Subordinated Lenders. *See* Deposition of Ezra Nilson, a true and correct copy of which is attached hereto as Exhibit "D," at 51:12 – 52:2.

62.     As such, in light of Plaintiffs' actions and pursuant to the Subordination Agreement, Defendants are left without any assurances whatsoever that the Plaintiffs intend to return—or are even in possession of—the Distributions at issue.

63.     There is a substantial likelihood that Defendants will prevail on the merits of this Counterclaim.   As stated above, section 2 of the Subordination Agreement prohibited Plaintiffs from accepting any payments from the Woodside Group while there was a continuing event of default under the Senior Credit Agreement.   Despite this provision and the Woodside Group's admitted default under the Senior Credit Agreement in January 2007, if not earlier, Plaintiffs accepted payments from the Woodside Group in clear violation of the Subordination Agreement.   Additionally, upon receipt of these wrongful payments and in violation of section 3 of the Subordination Agreement, the Plaintiffs failed to hold the Distributions in trust for the benefit of or immediately pay or deliver to either the Administrative Agent or the Defendants the funds in question.   This further breach gives rise to the causes of action stated herein.

64.     The continuing and threatened harm to Defendants outweighs the harm a preliminary injunction would cause to Plaintiffs.   Defendants are asking the Court to exercise its equitable powers only to the extent necessary to enjoin the Plaintiffs from

further derogation of their obligations under the Subordination Agreement, a contract to which they have been parties since May 5, 2006, when it was executed.  In contrast to the minimal burden that this equitable relief would place on the Plaintiffs, Defendants are facing a threat of grave harm should the injunction not be issued.  Given Insider Plaintiff Nilson's testimony cited above, Plaintiffs appear to lack the funds necessary to compensate Defendants for the wrongful, unlawful conduct at issue.  As a result, the Defendants will almost certainly be left without tens of millions of dollars that rightfully belong to them.  The funds at issue are finite and loss thereof could permanently damage the Defendants as their rightful owners.

65.     Moreover, on information and belief (and as described above), Plaintiffs are expected to receive, and/or have already received, a multi-million dollar tax windfall in the near future in which Defendants have an equitable interest.  ***The Tax Refunds are simply repayment of funds that were improperly distributed to the federal and state governments on behalf of the Plaintiffs and in breach of the Subordination Agreement***.  Defendants anticipate that this cash, if not dissipated by Plaintiffs, would more than compensate the Defendants for the harm they have suffered due to the Plaintiffs' above-described wrongful actions.  In fact, in a September 25, 2009, telephonic hearing in this action, Plaintiffs' counsel admitted to this Court that Insider Plaintiff Nilson *alone* is already in possession of a $59 million Tax Refund that he received in July 2009.  *See* Exhibit "E", Reporter's Transcript of Proceedings for September 25, 2009 Telephonic Motion Hearing, 19:14 – 19:17 and 23:21.  Counsel made the same representation in papers filed in conjunction with the Woodside Group's bankruptcy cases pending in the

28

Central District of California, a true and correct copy of which is attached hereto as Exhibit "F," at 4.   Insider Plaintiff Nilson's Tax Refund alone should satisfy any judgment awarded in this case.   Additionally, according to the independent examiner appointed in the Woodside Group's bankruptcy cases, even after paying a portion of the Tax Refund to Defendants for recoupment of the their damages, Plaintiffs would still be left with tens of millions of dollars in Tax Refunds.   *See* Exhibit B, Statement of Investigation Conducted by Examiner Paul S. Aronzon at 4:2 – 4:3.   Alternatively, should the Plaintiffs spend or otherwise dissipate these Tax Refunds, Defendants will likely never be adequately compensated.   As such, there is no adequate remedy at law, and the threatened harm to Defendants far outweighs the minimal burden a preliminary injunction would place on Plaintiffs.

66.     Issuance of a preliminary injunction would not adversely affect the public interest and would be in furtherance of public policy as Defendants are seeking injunctive relief only to preserve and protect rights and obligations to which the parties have already contractually agreed to be bound in the Subordination Agreement.   The Court's use of its equitable powers would serve the public interest as it would reinforce the rights and duties conferred by the freedom to contract.   As stated above, Plaintiffs independently and freely entered into to the Subordination Agreement.   The public interest is served by this Court merely preserving the rights and obligations to which the Administrative Agent (on behalf of Defendants) and the Plaintiffs have previously agreed.

67.     Defendants are willing to post a bond in the amount the Court deems appropriate.

68.     Defendants ask the Court to permit their participation in the preliminary injunction hearing set for November 18, 19 and 20, 2009.

## SEVENTH COUNTERCLAIM FOR RELIEF
### (Bad Faith – Utah Code Ann. § 78B-5-826)

69.     Defendants repeat and re-allege paragraphs 1-68 and incorporate them by reference as though fully set forth herein.

70.     The claims asserted by the Plaintiffs in their Complaint are without merit and were not brought or asserted in good faith.

71.     Defendants have incurred attorneys' fees and costs in responding to the claims and defenses asserted by the Plaintiffs.

72.     Pursuant to Utah Code Ann. § 78B-5-826, Defendants are entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their First Counterclaim for Relief as follows:

1.     For damages in an amount to be proven at trial;

2.     For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement; and

3.     For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Second Counterclaim for Relief as follows:

30

1.      For an order directing Plaintiffs to comply with the terms of the Subordination Agreement;

2.      For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement; and

3.      For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Third Counterclaim for Relief as follows:

1.      For an order compelling Plaintiffs to pay JPMorgan, as Administrative Agent for Defendants, an amount equal to the value of the benefits wrongfully retained by Plaintiffs in an amount to be determined at trial;

2.      For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement; and

3.      For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Fourth Counterclaim for Relief as follows:

1.      For an order imposing a constructive trust upon all proceeds distributed to, or received by, Plaintiffs in violation of the terms of the Subordination Agreement, including, without limitation, the Distributions and the Tax Refunds, in an amount to be proven at trial;

2.      For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement; and

3.      For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Fifth Counterclaim for Relief as follows:

1.      For damages in an amount to be proven at trial;

2.      For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement;

3.      For punitive damages in an amount to be determined at trial; and

4.      For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Sixth Counterclaim for Relief as follows:

1.      For an order compelling Plaintiffs to pay JPMorgan as Administrative Agent for Defendants, an amount equal to the value of the benefits wrongfully retained by Plaintiffs in an amount to be determined at trial;

2.      For immediate entry of an order enjoining Plaintiffs and all those acting in concert with them, including all heirs, legal representatives, successors and assigns, from disseminating, transferring and/or otherwise disposing of or spending any funds they received or will receive in the future from the Woodside Group, including, without limitation, the Distributions and the Tax Refunds;

4851-0435-7637.1

3.      For immediate entry of an order enjoining Plaintiffs and all those acting in concert with them, including all heirs, legal representatives, successors and assigns, from disseminating, transferring and/or otherwise disposing of or spending any Tax Refunds they receive or have received in an amount equal to all Distributions made by the Woodside Group to or for the benefit of the Subordinated Lenders in the calendar year 2007;

4.      For reasonable attorneys' fees and costs as provided for pursuant to section 17 of the Subordination Agreement; and

5.      For such other and further relief as the court deems just and equitable in the premises.

WHEREFORE, Defendants/counterclaimants pray for judgment in their favor and against Plaintiffs/Counter-Defendants on their Seventh Counterclaim for Relief as follows:

1.      For reasonable attorneys' fees and costs as provided for pursuant to Utah Code Ann. § 78B-5-825; and

2.      For such other and further relief as the court deems just and equitable in the premises.

4851-0435-7637.1

DATED this 19th day of October 2009.

/s/ Shane D. Hillman
SHANE D. HILLMAN
PARSONS BEHLE & LATIMER

OF COUNSEL:
RICHARD S. KRUMHOLZ
KRISTIN R. TURNER
REBECCA O. MILNE
FULBRIGHT & JAWORSKI L.L.P.
*Admitted Pro Hac Vice*

Attorneys for Defendants Bank of America, N.A., KeyBank National Association, Regions Bank, Bank of the West, Union Bank of California, N.A., Comerica Bank, SunTrust Bank, Compass Bank, JPMorgan Chase Bank, N.A., and First Commercial Bank, New York Agency